NOTICE
Decision filed 02/18/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190401-U

NOS. 5-19-0401, 5-19-0403 (cons.)

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* RACE H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Shelby County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 16-JD-49 & 18-JD-6 |
| | ) | |
| Race H., | ) | Honorable |
| | ) | Douglas L. Jarman, |
| Respondent-Appellant). | ) | Judge, presiding. |

PRESIDING JUSTICE WELCH delivered the judgment of the court.
Justices Cates and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: The revocation of the respondent's probation and commitment to the Illinois Department of Juvenile Justice (DOJJ) for an indeterminate term is vacated where the trial court failed to substantially comply with Illinois Supreme Court Rule 402A (eff. Nov. 1, 2003) before accepting his admissions to the State's petitions to revoke his probation and failed to comply with section 5-750 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-750 (West 2016)) when it committed him to the DOJJ. The matter is remanded with directions to admonish the respondent in substantial compliance with Rule 402A, hold further revocation proceedings, and before committing him to the DOJJ, fully comply with the mandates of section 5-750 of the Act.

¶ 2    On April 8, 2019, the respondent, Race H., entered admissions to the allegations contained in the State's petitions to revoke his probation filed in the circuit court of Shelby County. That same day, the trial court accepted his admissions and sentenced him to the Illinois

1

Department of Juvenile Justice (DOJJ) for an indeterminate term not to exceed six years. The respondent appeals, arguing that he was not properly admonished in accordance with Illinois Supreme Court Rule 402A (eff. Nov. 1, 2003) before the court accepted his admissions and that the court failed to comply with section 5-750 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-750 (West 2016)) when it committed him to the DOJJ for an indeterminate term. The State concedes that the respondent was not admonished in substantial compliance with Rule 402A and that the court failed to comply with section 5-750 when committing him to the DOJJ. For the reasons that follow, we vacate the court's revocation of the respondent's probation, vacate the order of commitment, and remand the matter with directions.

¶ 3                                    I. BACKGROUND

¶ 4      On August 2, 2016, when the respondent was 12 years old,[1] the State filed a two-count petition for adjudication of wardship in case No. 16-JD-49, charging him with one count of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(e) (West 2016)) and one count of criminal sexual abuse (*id.* § 11-1.50(a)(2)) for committing an act of sexual conduct with an intellectually disabled person. Thereafter, the State added two charges of unlawful violation of a restraining order (705 ILCS 405/5-510 (West 2016)) for making intimidating or harassing contact with certain witnesses in the case. On June 16, 2017, the respondent entered a plea of guilty to the aggravated criminal sexual abuse charge. In exchange for his guilty plea, the State agreed to dismiss the remaining criminal sexual abuse charge and withdraw its petition for adjudication of wardship that was filed in case No. 16-JD-65 against the respondent (that petition charged him with theft). On October 5, 2017, the court sentenced the respondent to probation for

---

[1]The respondent was born on August 16, 2003.

three years (until October 4, 2020) and, in pertinent part, ordered him to refrain from possessing a firearm or other dangerous weapon.

¶ 5 On February 15, 2018, the State filed a petition to revoke the respondent's probation based on allegations that he unlawfully possessed a shotgun and two rifles. That same day, the trial court entered an order for detention, finding that it was a matter of immediate and urgent necessity that the respondent be detained at an approved juvenile detention center, that reasonable efforts had been made to avoid detention, and that no further efforts could be made. On February 21, 2018, the State filed a two-count petition for adjudication of wardship in case No. 18-JD-6 against the respondent, charging him with two counts of aggravated unlawful use of weapons. On March 5, 2018, the respondent was released from detention and placed on home confinement with Global Positioning System (GPS) monitoring. The respondent was only permitted to leave his home for school, counseling, and medical appointments. A status hearing was held on April 23, 2018, where the respondent's counsel reported that the respondent was following all of his home confinement restrictions, and the State agreed to loosen the restrictions somewhat so that he could go outside within the boundary of the family yard.

¶ 6 On May 21, 2018, the respondent admitted to the allegations contained in the State's petition to revoke probation filed in case No. 16-JD-49 and entered a negotiated plea of guilty to one count of aggravated unlawful use of a weapon. In exchange, the State agreed to dismiss the remaining aggravated unlawful use of a weapon count and recommended a sentence of three years' probation in 16-JD-49 (until May 20, 2021) and two years' probation in case No. 18-JD-6 (until May 20, 2020). The trial court accepted the plea and the admission and sentenced the respondent to the negotiated sentence. The court removed its previous order which confined the respondent to his home with GPS monitoring.

3

¶ 7    On February 13, 2019, the trial court entered another order of detention, finding that it was a matter of immediate and urgent necessity that the respondent be detained at an approved juvenile detention facility. On April 4, 2019, the State filed a petition to revoke the respondent's probation based on allegations that the respondent committed a theft in case No. 19-JD-7. At the April 8, 2019, revocation hearing, the parties indicated that the respondent had entered an admission in the theft case. However, the respondent's counsel asked to withdraw that admission because the respondent had entered into it based on some "faulty information" that counsel had provided him. Counsel indicated that if the trial court allowed the respondent to withdraw the admission, the respondent would enter open admissions to both petitions to revoke (16-JD-49 and 18-JD-6). After questioning the respondent to ensure that he had discussed this with his counsel and mother, the court allowed him to withdraw his previous admission. Thereafter, the State withdrew its allegations in case No. 19-JD-7.

¶ 8    As for the petitions to revoke, the trial court made the following admonishments before accepting the respondent's admissions. The court admonished the respondent that aggravated criminal sexual abuse was a Class 2 felony with possible penalties of incarceration in the DOJJ for an indeterminate period of time, detention for up to 30 days, home confinement, probation, and public service duty. The court recited the allegation that the respondent had failed to comply with the terms of his probation in that he committed the offense of theft (as alleged in 19-JD-7). The court admonished him that, in case No. 18-JD-6 (aggravated unlawful use of a weapon, a Class 4 felony), he could be subject to incarceration in the DOJJ with the same "possible penalties as in the prior case." The court then noted that the specific allegation was that the respondent failed to comply with the terms of probation when he committed a theft. The court also admonished the respondent that he was entitled to a hearing on "that," that the State would

4

have to prove those allegations by a preponderance of the evidence, that the respondent could provide a defense if he wanted, that he could testify if he wanted, and that his silence could not be used against him. The court then asked the respondent if he wanted to "waive that right to a hearing and admit the allegations in the Petition to Revoke," and the respondent answered, "Yes, sir." The court then inquired, "And that's in both 16-JD-49 and also 18-JD-6," and the respondent again answered, "Yes, sir." The court indicated that it had been handed two signed admissions and a waiver of hearing and asked the respondent if he had an opportunity to discuss the admissions and waiver with his attorney. The respondent answered that he had. The court then asked whether the respondent had any questions, and he responded that he did not. The court ordered the social history report and set the date for the dispositional hearing on June 3.

¶ 9    At the June 3, 2019, dispositional hearing, Heather Wade, the respondent's probation officer with the Shelby County probation department, testified that she conducted an assessment of the respondent, and he scored "high." She explained that for minors who received a high score on the assessment, there were targeted intervention services, such as substance abuse counseling, mental health counseling, sex offense counseling, home detention, and curfew that were available for them. She indicated that the respondent had previously participated in mental health counseling and sex offender counseling and that he was ordered to begin family counseling.

¶ 10    Wade explained that the respondent's assessment level determined his supervision level for probation, and that, because he was high risk, he would be required to meet with her two times per month, once in her office and once outside of the office, and she would conduct a home visit one time every other month. When he was previously on probation, there was a set

schedule with the respondent's mother where his mother would take him to sex offender counseling and then to Wade's office. She also visited his home as frequently as possible.

¶ 11 After Wade's testimony, the following argument was presented. Noting the seriousness of the charges and the respondent's previous unsuccessful attempts at probation, the State requested that he be sentenced to an indeterminate sentence in the DOJJ. In contrast, the respondent's counsel argued that, before the minor respondent could be sentenced to the DOJJ, the court must determine that no other services were available and that the testimony revealed that there were other services that could be utilized if he was again placed on probation. Thus, counsel requested that the respondent be sentenced to probation with imposed community-based supervision options, such as counseling, home confinement, curfew, and public service work.

¶ 12 The trial court, after considering the presentence investigation report, social history report, the court files, the testimony, and the arguments, found that the respondent was "of an age that he's old enough to be sentenced" to the DOJJ. The court noted that a term of incarceration would be permitted if the respondent was an adult. The court stated that although there were community resources available, the respondent was using those community resources at the time that he committed the new offenses and violated the terms of his probation. The court noted that the respondent had previously been placed on home confinement, which was unsuccessful. The court then made a finding of "parental inability" and determined that a sentence to the DOJJ was necessary to ensure the protection of the public. Accordingly, the court sentenced the respondent to the DOJJ for an indeterminate period of time and ordered him to pay court costs.

¶ 13 That same day, the trial court entered a written commitment order to the DOJJ, in which it found that commitment to the DOJJ was necessary to ensure the protection of the public; that reasonable efforts could not, at that time, prevent or eliminate need for removal; and that

removal from the home was in the best interests of the minor, his family, and the public. The court also found that commitment was the least restrictive alternative, which was based on evidence that efforts were made to locate less restrictive alternatives and that those efforts were unsuccessful in that the respondent was placed on probation on two prior occasions, that he violated probation both times, and that several community resources and interventions were used during probation but were unsuccessful. The court further found that secure confinement was necessary based on a consideration of the requisite individualized statutory factors identified in section 5-750(1) of the Act (705 ILCS 405/5-750(1) (West 2016)). The court then ordered that the respondent be committed to the DOJJ for an indeterminate period, not to exceed the period for which an adult could be committed for the same act or the respondent's twenty-first birthday, whichever occurred first. The court's order stated that the respondent could not be held in a DOJJ facility without being released for a maximum term of six years.

¶ 14 On June 27, 2019, the respondent's counsel filed a motion to reconsider his sentence, arguing that substantial factors in mitigation had been presented at the sentencing hearing, that the trial court failed to give adequate weight to those mitigating factors when imposing the sentence, and that the court failed to give adequate weight to the individualized factors identified in section 5-750. Counsel requested that the court reconsider its sentencing decision and resentence the respondent to a term of probation or a sentence substantially less than an indeterminate period in the DOJJ. On August 28, 2019, the court, finding that it gave appropriate weight to the factors in aggravation and mitigation, denied the respondent's motion to reconsider. The respondent appeals the revocation of his probation and the dispositional order.

¶ 15                                  II. ANALYSIS

¶ 16    The respondent's first contention on appeal is that the trial court failed to properly admonish him in accordance with Illinois Supreme Court Rule 402A (eff. Nov. 1, 2003) before accepting his admissions to the State's petitions to revoke his probation. The State concedes that the respondent was not properly admonished.

¶ 17    Rule 402A sets forth the admonishments that must be given to a defendant before a court can accept a defendant's admission to the allegations contained in the petition to revoke his probation. Rule 402A instructs as follows:

> "In proceedings to revoke probation, conditional discharge or supervision in which the defendant admits to a violation of probation, conditional discharge or supervision, or offers to stipulate that the evidence is sufficient to revoke probation, conditional discharge or supervision, there must be substantial compliance with the following.
>
> (a) Admonitions to Defendant. The court shall not accept an admission to a violation, or a stipulation that the evidence is sufficient to revoke, without first addressing the defendant personally in open court, and informing the defendant of and determining that the defendant understands the following:
>
> (1) the specific allegations in the petition to revoke probation, conditional discharge or supervision;
>
> (2) that the defendant has the right to a hearing with defense counsel present, and the right to appointed counsel if the defendant is indigent and the underlying offense is punishable by imprisonment;
>
> (3) that at the hearing, the defendant has the right to confront and cross-examine adverse witnesses and to present witnesses and evidence in his or her behalf;
>
> (4) that at the hearing, the State must prove the alleged violation by a preponderance of the evidence;
>
> (5) that by admitting to a violation, or by stipulating that the evidence is sufficient to revoke, there will not be a hearing on the petition to revoke probation, conditional discharge or supervision, so that by admitting to a violation, or by stipulating that the evidence is sufficient to revoke, the defendant waives the right to a hearing and the right to confront and cross-examine adverse witnesses, and the right to present witnesses and evidence in his or her behalf; and
>
> (6) the sentencing range for the underlying offense for which the defendant is on probation, conditional discharge or supervision.
>
> (b) Determining Whether Admission Is Voluntary. The court shall not accept an admission to a violation, or a stipulation sufficient to revoke without first determining that the defendant's admission is voluntary and not made on the basis of any coercion or

8

promise. If the admission or tendered stipulation is the result of an agreement as to the disposition of the defendant's case, the agreement shall be stated in open court. The court, by questioning the defendant personally in open court, shall confirm the terms of the agreement, or that there is no agreement, and shall determine whether any coercion or promises, apart from an agreement as to the disposition of the defendant's case, were used to obtain the admission.

(c) Determining Factual Basis for Admission. The court shall not revoke probation, conditional discharge or supervision on an admission or a stipulation without first determining that there is a factual basis for the defendant's admission or stipulation." Ill. S. Ct. R. 402A (eff. Nov. 1, 2003).

¶ 18    The goal of the Rule 402A admonishments is to ensure that respondent understands his admission, the rights that he is waiving, and the potential consequences he faces by admitting a probation violation. *In re Westley A.F.*, 399 Ill. App. 3d 791, 796 (2010). To satisfy due process, the trial court must substantially comply with Rule 402A. *Id.* A court substantially complies with Rule 402A when, despite the fact that the court did not specifically admonish respondent as required by the rule, the record affirmatively and specifically shows that respondent in fact understood each of the required admonishments. *People v. Saleh*, 2013 IL App (1st) 121195, ¶ 14. A claim that the court failed to substantially comply with Rule 402A is subject to *de novo* review. *Id.*

¶ 19    Initially, we note that the respondent did not argue before the trial court that it failed to substantially comply with Rule 402A when admonishing him. However, a respondent's claim that the court failed to admonish him in substantial compliance with Rule 402A is not subject to forfeiture. *People v. Curry*, 2019 IL App (3d) 160783, ¶ 22.

¶ 20    Having found that the respondent's claim was not subject to forfeiture, we now turn to the merits of the respondent's claim. After carefully reviewing the record, we find that the record supports the respondent's argument that the trial court failed to substantially comply with Rule 402A. The court made the following admonishments before accepting the respondent's admissions. In case No. 16-JD-49, the court admonished the respondent that he could be subject

9

to incarceration in the DOJJ for an indeterminate period of time and that he could be detained for up to 30 days, receive home confinement, be sentenced to probation, and be ordered to complete public service work. The court also noted that the specific allegation was that the respondent had failed to comply with the terms of his probation when he committed the theft. In case No. 18-JD-6, the court admonished the respondent that he could be subject to incarceration in the DOJJ and that he could receive the same possible penalties as in the prior case. The court again noted that the specific allegation was that the respondent had failed to comply with the terms of his probation when he committed the theft. The court admonished the respondent that he was entitled to a "hearing on that"; that, at the hearing, the State would have to prove the allegations by a preponderance of the evidence; that the respondent could provide a defense if he wanted to; that he could testify if he wanted to; and that his silence would not be used against him. The court then questioned the respondent as to whether he wanted to waive the right to a hearing and admit the allegations in the petition to revoke, in which the respondent answered in the affirmative. The court indicated that the respondent had signed two admissions and waivers. The court then inquired as to whether the respondent had an opportunity to speak with his counsel, and the respondent answered that he did. The court asked the respondent if he had any questions, and the respondent said that he did not.

¶ 21    The State concedes that the trial court did not admonish the defendant that he had a right to appointed counsel, that he had a right to present witnesses and evidence on his own behalf, that he had a right to confront and cross-examine witnesses, and that, by admitting to the probation violation, he was waiving these rights. Given the court's incomplete admonishments, the respondent was not adequately informed about the potential consequences that he faced by admitting to the allegations in the petitions to revoke his probation. Thus, we find that the court

10

failed to admonish him in substantial compliance with Rule 402A before accepting his admissions to the petitions to revoke his probation. Accordingly, we vacate the trial court's order revoking the respondent's probation. See *Curry*, 2019 IL App (3d) 160783, ¶ 23 (the appellate court vacated the order revoking defendant's probation and remanded for new admonishments where the trial court failed to substantially comply with Rule 402A).

¶ 22 The respondent next contends that the trial court failed to consider the individualized factors set forth in section 5-750(1) of the Act (705 ILCS 405/5-750(1) (West 2016)) before committing him to the DOJJ. Section 5-750(1), which deals with commitment of a juvenile to the DOJJ, instructs as follows:

> "(1) *** Before the court commits a minor to the Department of Juvenile Justice, it shall make a finding that secure confinement is necessary, following a review of the following individualized factors:
> (A) Age of the minor.
> (B) Criminal background of the minor.
> (C) Review of results of any assessments of the minor, including child centered assessments such as the CANS.
> (D) Educational background of the minor, indicating whether the minor has ever been assessed for a learning disability, and if so what services were provided as well as any disciplinary incidents at school.
> (E) Physical, mental and emotional health of the minor, indicating whether the minor has ever been diagnosed with a health issue and if so what services were provided and whether the minor was compliant with services.
> (F) Community based services that have been provided to the minor, and whether the minor was compliant with the services, and the reason the services were unsuccessful.
> (G) Services within the Department of Juvenile Justice that will meet the individualized needs of the minor.
> (1.5) Before the court commits a minor to the Department of Juvenile Justice, the court must find reasonable efforts have been made to prevent or eliminate the need for the minor to be removed from the home, or reasonable efforts cannot, at this time, for good cause, prevent or eliminate the need for removal, and removal from home is in the best interests of the minor, the minor's family, and the public." *Id.*

¶ 23 Here, at the dispositional hearing, there was testimony presented about the services that were available to the respondent if he was sentenced to probation. In entering the order of

11

commitment, the trial court also considered the presentence investigation report, the social history report, the court files, the testimony, and the arguments. In light of the respondent's previous unsuccessful attempts at probation, the court did not consider other alternatives that were less restrictive than commitment. However, the record indicates that, in entering the commitment order, the court failed to consider all of the section 5-750(1) factors. In particular, although the dispositional hearing encompassed services available to the juvenile in the community, there was no evidence in the record regarding whether the DOJJ would provide services that met the respondent's individualized needs. In its appellee brief, the State concedes that the court failed to consider this particular factor. Thus, we find that the trial court failed to comply with section 5-750(1) of the Act. Accordingly, we must vacate the order for commitment and remand for full compliance with the Act. See *In re Justin F.*, 2016 IL App (1st) 153257, ¶ 31 (because there was no evidence in the record concerning the availability of services for respondent in the DOJJ, one of the factors the trial court was required to consider before committing respondent to the DOJJ, the commitment order must be vacated).

¶ 24                                    III. CONCLUSION

¶ 25    The judgments of the circuit court of Shelby County revoking the respondent's probation and committing him to the DOJJ are vacated. The cause is remanded with directions that the court (1) admonish the respondent in substantial compliance with Rule 402A; (2) hold further probation revocation proceedings consistent with this disposition; and (3) before committing him to the DOJJ, fully comply with the mandates of section 5-750 of the Act by hearing evidence and taking into consideration the services available through the DOJJ to assist the respondent.


¶ 26    Orders vacated and remanded with directions.